**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| TERRENCE HOLMES, | : | Civil No. 3:17-CV-1567 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| PA DEPT. OF CORRECTIONS, *et al.*, | : | |
| | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## <u>MEMORANDUM</u>

The matter presently before the court in this case is a motion for summary judgment filed by Defendants Dr. Michael Moclock and Physician's Assistant ("PA") Nocholle Boguslaw.  (Doc. 21.)  The court finds Plaintiff Terrance Holmes failed to properly exhaust his Eighth Amendment medical claims as to Defendants' treatment of his left breast issues and their delayed decision to place him on dialysis.  His claim that Defendants ignored his ongoing complaints of testicular and kidney pain, although properly exhausted, are barred by the statute of limitations.   For the reasons that follow, Defendants' motion for summary judgment is granted.

### RELEVANT PROCEDURAL HISTORY

Holmes filed this action on August 23, 2017, to address aspects of his health care while housed at the Coal Township State Correctional Institution ("SCI-Coal Twp."), in Coal Township, Pennsylvania.  The court (Hon. A. Richard Caputo)

screened the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B), and dismissed it with leave to file an amended complaint.  (Doc. 10.)  On May 9, 2019, Holmes filed an amended complaint against the Pennsylvania Department of Corrections ("DOC"), Dr. Moclock, and PA Boguslaw.  (Doc. 15.)  He alleges that while housed at SCI-Coal Twp. Dr. Moclock and PA Boguslaw improperly treated his complaints of left nipple discharge prior to his diagnosis of breast cancer, ignored his ongoing complaints of testicular and kidney pain, and delayed the commencement of kidney dialysis resulting in damage to his kidneys.[1]  (Doc. 15.)  On May 15, 2019, the court dismissed all claims against the DOC per 28 U.S.C. § 1915(e)(2)(B), and directed service of the amended complaint on Dr. Moclock and PA Boguslaw.  (Doc. 16.)

On July 15, 2019, PA Boguslaw and Dr. Moclock filed a motion to dismiss the amended complaint, or in the alternative, motion for summary judgment, arguing Holmes failed to properly exhaust his administrative remedies, and that claims arising prior to September 2015 are barred by the statute of limitations. (Doc. 21.)  On July 17, 2019, the court informed the parties that, pursuant to *Paladino v. Newsom*, 885 F.3d 203 (3d Cir. 2018), it would consider the exhaustion issue in the context of summary judgment, and by doing so, would

---

[1] Holmes is currently housed at SCI-Laurel Highlands in Somerset, Pennsylvania.  *See http://inmatelocator.cor.pa.gov/#/Result* (Search:  Terrence Holmes, last visited July 16, 2020). He was transferred to SCI-Laurel Highlands on February 7, 2018.  (Doc. 23-1 at 22.)

consider matters outside the pleadings in its role as factfinder.  (Doc. 22.)  The

court gave the parties the opportunity to submit additional materials on the issue of

exhaustion.  (*Id.*)  Holmes filed a motion to compel Defendants to provide him

with a free copy of his medical record and grievance file they obtained via

subpoena from the DOC.  (Doc. 26.)  Defendants objected to this request as they

supplied Holmes with a copy of all grievances that reached final review, and

argued that his medical record and other grievances were available to him at his

institution, SCI-Laurel Highlands.  (Doc. 28.)  The court denied Holmes' motion to

compel.  (Doc. 31.)

Holmes responded to Defendants' statement of materials facts on August 26,

2019.  (Doc. 27.)  Defendants filed a reply brief on August 30, 2019, which

included the balance of Holmes' grievance file from SCI-Laurel Highlands.  (Doc.

29.)  After receiving an enlargement of time, Holmes filed an opposition brief and

supporting exhibits in November, 2019.  (Docs. 33, 35–36.)  The motion for

summary judgment is thus ripe for review.

F<small>ACTUAL</small> B<small>ACKGROUND</small>[2]

## A. DOC's Grievance Policy, DC-ADM 804

The DOC provides prisoners with a three-step administrative remedy process that allows them to seek resolution of issues arising during their confinement called the "Inmate Grievance System, DC-ADM 804."[3]  Pursuant to DC-ADM 804, inmates must first file a grievance with the Facility Grievance Coordinator at the facility where the event(s) occurred.  If dissatisfied with the initial review of the grievance, the inmate may appeal the decision to the Facility Manager or Superintendent.  Upon receiving a decision from the Superintendent, the inmate may seek final review of the grievance from the Secretary's Office of Inmate Grievances ("SOIGA").  A claim is not properly exhausted until SOIGA issues a written decision addressing the merits of the appeal.

Pursuant to DC-ADM 804, an inmate must, *inter alia,* file a grievance within 15 working days after the event upon which the claim is based.  *See* DC-ADM 804 at §1(A)(8).  The grievance must be legible and include a statement of facts relevant to the claim and identify the individuals "directly involved in the

---

[2] The following facts are undisputed or, where disputed, reflect Holmes' version of the facts pursuant to this court's duty to view all facts and reasonable inferences in the light most favorable to the nonmoving party.  *See Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019).

[3] A copy of the DOC's inmate grievance policy, DC-ADM 804 (effective date 2/16/2016) is available at https://www.cor.pa.gov (About US/DOC Policies/804 Inmate Grievances) (last visited Jul. 16, 2020).

event(s)." *Id*. at §1(A)(11)(b).  "Any grievance based on separate events must be

presented separately, unless it is necessary to combine the issues to support the

claim." *Id.* at §1(A) (14).  Only issues "***raised in the initial grievance and/or***

appealed to the Facility Manager may be appealed to Final Review." *Id*. at

§2(B)(1)(c) (emphasis in the original).  Inmate appeals to final review must

"contain reason(s) for appealing the Facility Manager's" decision. *Id*. at § 2(B)(e).

Additionally, the inmate "is responsible for providing the SOIGA with all required

documentation relevant to the appeal." *Id*. at §2(B)(j).   "[A] legible copy of the

Initial Grievance" is required.  (*Id*.)  The DOC affords indigent inmates up to

$10.00 a month for copy service and legal postage. *Id*. at §2(B)(k).  An inmate's

failure to supply any of the necessary documentation may result in the dismissal of

their appeal. *Id*. at §2(B)(j).

## B. Holmes' Medical Care Grievances

Holmes filed Grievance 502096 on March 7, 2014, for "the neglect,

malpractice and blatant disregard to [his] health [by] the medical department" to

his complaints of kidney and testicle pain.  It was determined that Holmes had

cysts on his right kidney and testicle.  Holmes argued that ibuprofen for temporary

pain relief was insufficient treatment, and asked for a biopsy of his testicles and

kidney, and to see a specialist.  (Doc. 23–1 at 2.)  At initial review, the grievance

was denied, noting that medical providers and the Nephrology Department saw

Holmes on multiple occasions and the Nephrologist's recommendations were "being followed." (*Id*. at 3.)  Holmes appealed the denial of his grievance to the Facility Manager, and then SOIGA. (*Id*. at 4, 6–7.)  The DOC's Director of the Bureau of Health Care Services reviewed Holmes' "medical record and has determined the medical care provided is appropriate and reasonable … Mr. Holmes' nephrology treatment plan is ongoing with consultation of his nephrologist, Dr. Salameh." (*Id*. at 12.)  On September 15, 2014, SOIGA upheld the denial of his grievance. (*Id*. at 13.)  Holmes properly exhausted his available administrative remedies with respect to this grievance.

Holmes concedes that he did not mention Dr. Moclock or PA Boguslaw in the original grievance or his grievance appeals.  Holmes did not file any other grievance regarding a delay in his receipt of dialysis treatment. (Doc. 27, Pl.'s Reply to Defs. Statement of Material Facts, at ¶ 23.)  However, he did raise the issue of his kidney failure, and delayed start of his dialysis treatment, on February 27, 2017, in his appeal to final review concerning Grievance 733085. (Doc. 23-1 at 26–27.)

Holmes filed Grievance 733085 on April 18, 2018, alleging that for 23 months PA Boguslaw did not accurately assess or provide him adequate treatment for ongoing complaints of bloody discharge from his left nipple, which later was diagnosed as breast cancer. (*Id*. at 16–17.)  He stated his "cancer is in its earliest

6

stage," and as relief, sought compensatory and punitive damages, as well as PA

Boguslaw's removal from her job. Holmes does not mention Dr. Moclock in the

grievance. (*Id*.) On April 18, 2018, Corrections Health Care Administrator

Merritt-Scully denied the grievance at initial review. In her response, she noted

that Holmes first presented to the medical unit with a complaint of bloody

discharge from his left nipple in June 22, 2015. PA Boguslaw saw Holmes and

told him his nipple appeared chaffed and ordered blood work. The results of the

bloodwork were not clinically significant. He did not return to the medical unit for

complaints concerning discharge from his nipple until August 30, 2017. A

physician saw him, and ordered bloodwork. (*Id.* at 21.) Dr. Moclock examined

Holmes on September 6, 2017 and found no masses noting the "[b]reast appeared

normal on exam." (*Id*.) On January 30, 2018, when Holmes was sent for a

diagnostic testing for his breast issues, he was hospitalized, and dialysis was

started. (*Id*. at 18.) Holmes' ultrasound and mammogram did not reveal any

masses. The breast biopsy revealed cancer. (*Id*. at 21–23.) The Facility Manager

denied Holmes' appeal on June 20, 2018. (*Id*. 18–19.) The Facility Manager

responded on June 20, 2018. (*Id.* at 21–22.) Holmes filed an appeal to final

review on July 27, 2018. (*Id*. at 24–33.) On August 15, 2018, SOIGA rejected

Holmes' appeal as incomplete because his grievance was illegible. (*Id*. at 34.)

SOIGA granted him 15 days to resubmit his appeal and directed his attention to the

current guideline allowing indigent inmates to obtain photocopies and postage.

(*Id.*)  On August 24, 2018, Holmes notified SOIGA that he did "not have any more money to make copies of pay for postage" and did not send a more legible copy of the grievance.  (*Id.* at 35.)

On September 10, 2018, SOIGA advised Holmes it would take no further action on his appeal because he did not provide a legible copy of his grievance. (*Id.* at 36.)  On October 23, 2018, SOIGA dismissed the appeal finding Holmes failed "to comply with submission procedures."  (*Id.* at 37.)  SOIGA added that Holmes did not resubmit the requested document within 15 days of their August 15, 2018-notice.  (*Id.*)

## JURISDICTION

The court has federal question jurisdiction over the amended complaint as it asserts Eighth Amendment claims of deliberate indifference under 42 U.S.C. § 1983.  *See* 28 U.S.C. § 1331.  Venue is proper in this district because the alleged acts and omissions giving rise to the claims occurred at SCI-Coal Township, Northumberland County, Pennsylvania, which is in this district.  *See* 28 U.S.C. § 1391(b)(2).

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 sets forth the standard and procedures for the grant of summary judgment.  Rule 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–323 (1986).  A factual dispute is "material" if it might affect the outcome of the suit under the applicable substantive law, and is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When evaluating a motion for summary judgment, a court "must view the facts in the light most favorable to the non-moving party" and draw all reasonable inferences in favor of the same.  *Hugh v. Butler Cty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

The moving party bears the initial burden of demonstrating the absence of a disputed issue of material fact.  *See Celotex*, 477 U.S. at 324.  "Once the moving party points to evidence demonstrating no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor."  *Azur v. Chase Bank, USA, Nat'l Ass'n*, 601 F.3d 212, 216 (3d Cir. 2010).  The non-moving

party may not simply sit back and rest on the allegations in its complaint; instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotations omitted); *see also Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." *Celotex*, 477 U.S. at 322–23. "Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Saldana*, 260 F.3d at 232 (quoting *Williams v. Borough of West Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989)).

## DISCUSSION

Defendants move for summary judgment based on the assertions that Holmes failed to properly exhaust his available administrative remedies as to his breast care, and failed to commence his kidney dialysis claims within the time period allowed.  They also argue claims related to his ongoing complaints of kidney and testicular pain, while properly exhausted, are barred by the statute of limitations.  (Doc. 21-1.)  Holmes counters that he properly exhausted all claims presented in his amended complaint.  He argues that he complied with the DOC's

10

exhaustion requirements with respect to Grievance 733083, but SOIGA dismissed his appeal without a merits evaluation.  Any claimed inadequacies of the copy he provided to SOIGA "are the fault of the DOC, not Plaintiff."  (Doc. 35.)  He also contends that no grievance process is available for him to raise claims against non-DOC employees such as Dr. Moclock and PA Boguslaw, and that his complaints of kidney and testicle pain are not time barred.  (*Id.*)

## A.   Holmes' Procedural Default of Claim Concerning his Left Breast.[4]

The Prison Litigation Reform Act ("PLRA") requires that a prisoner pursue all available administrative remedies within the prison's grievance system before bringing a civil rights action concerning prison conditions in federal court.  *See* 42 U.S.C. § 1997e(a); *Ross v. Blake*, -- U.S. --, 136 S.Ct. 1850, 1855 (2016).  Exhaustion is mandatory, and must be "proper," which requires a prisoner to "us[e] all steps that the agency holds out, and [to do] so <u>properly</u> (so that the agency addresses the issues on the merits)."  *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (emphasis in original).  Proper exhaustion requires using all "available" steps of an administrative process and complying with "deadlines and other critical procedural rules."  (*Id.* at 90, 93.)  The "filing [of] an untimely or otherwise procedurally

---

[4] The parties do not dispute that Holmes properly exhausted Grievance 502096 concerning his kidney and testicle pain.  *See* Doc. 23 at ¶ 14, Doc. 23-1 at 13, Doc. 27 at ¶ 14.  The court will address the claim related to this grievance separately.

defective administrative grievance or appeal" does not satisfy the PLRA's exhaustion requirement.  (*Id.*)  "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."  *Jones v. Bock*, 549 U.S. 199, 218 (2007).

Failure to follow the procedural requirements of the prison's grievance system will result in a procedural default of the claim.  *Spruill v. Gillis*, 372 F.3d 218, 227–32 (3d Cir. 2004); *see Robinson v. Supt. Rockview SCI*, 831 F.3d 148, 153 (3d Cir. 2016) ("[P]risoners must complete the administrative review process in accordance with the applicable procedural rules, rules that are defined not by the PLRA, but by the prison grievance process itself."); *see also Mack v. Klopotoski*, 540 F. App'x 108, 113 (3d Cir. 2013) (finding procedural default where inmate failed to provide photocopies of grievances and responses received to date to pursue internal appeal).

An inmate's failure to exhaust administrative remedies is only excusable if the remedies are unavailable.  *Ross*, 136 S.Ct. at 1858.  Where a prison's grievance policy "'operates as a simple dead end–with officers unable or consistently unwilling to provide any relief to aggrieved inmates," or 'when prison administrators thwart inmates from taking advantage of a grievance process through machinations, misrepresentation, or intimidation.'" *Id*. at 1859–60;

12

*Shifflett v. Korszniak*, 934 F.3d 356, 365 (3d Cir. 2019).  "[A]s soon as a prison fails to respond to a properly submitted grievance or appeal within the time limits prescribed by its own policies, it has made its administrative remedies unavailable and the prisoner has fully discharged the PLRA's exhaustion requirement."  *Id*. If the court concludes the plaintiff has failed to exhaust his available administrative remedies, the proper remedy is dismissal without prejudice of the portions of the complaint barred by section 1997e(a).  *Jones*, 549 U.S. at 223–34.

Defendants argue that Holmes failed to properly exhaust claims related to the treatment of his left breast and delayed onset of dialysis treatment.  (Doc. 21–1.)  Grievance 733085, filed on April 18, 2018, discusses Holmes' dissatisfaction with the treatment PA Boguslaw provided him over a 23-month period for complaints of bloody discharge from his left nipple which was later diagnosed as breast cancer.  Holmes appealed the denial of this grievance to final review. However, his application for appeal did not comply with the DOC's grievance policy submission requirements.  Holmes was afforded 15 working days to resubmit a proper appeal to final review to include a legible copy of the grievance. Holmes failed to satisfy this procedural requirement.

Holmes argues that SOIGA could have obtained a legible copy of the grievance from SCI-Laurel Highlands, and that any defect in the photocopying

quality was attributable to the DOC and not him.  In sum, he argues that he substantially complied with the grievance policy for the purpose of exhaustion.

The court does not agree.  While it stands to reason that SOIGA could obtain a copy of every inmate's grievance that is appealed to final review, that is not the procedure established by the DOC.  Instead, the DOC requires the inmate to provide a legible copy of the grievance and related documents to final review.  In a prior instance, Holmes proved his ability to follow this requirement.  Previously when SOIGA advised him of a deficiency in his document submission, and gave him additional time to submit the missing documents, he was able to successfully do so.  *See* Doc. 23-1 at 8–13.  Although Holmes claimed he lacked sufficient funds to obtain an additional copy of his grievance and postage to mail it to SOIGA in this instance, his argument is undermined by the prison's allotment of funds for photocopying and postage for indigent inmates to satisfy the grievance policy submission requirements.  Holmes does not contend that he requested a copy of the document from SCI-Laurel Highland or that prison officials prevented him from obtaining a legible copy of the grievance.

SOIGA properly dismissed his appeal to final review without considering it due to his failure to provide a legible copy of his grievance for review in a timely manner even after given additional time to do so.  (Doc. 23–1 at 37.)  Therefore, Holmes failed to comply with the procedural requirements of DC-ADM 804, the

DOC's grievance policy, with respect to Grievance 733085.  The court cannot shift the burden of obtaining a legible copy of an inmate's grievance to SOIGA in contradiction of the DOC procedure in retrospect, simply because Holmes failed to comply with the procedure.  Holmes' Eight Amendment claim related to his breast treatment emanating from Grievance 733085 are procedurally defaulted, and cannot support any claim against PA Boguslaw or Dr. Moclock in this action.

### B.  Holmes' Procedural Default of Claim Concerning Delayed Start of Dialysis.

Next, the court addresses Defendants' argument that Holmes did not submit any grievance concerning his medical team's decision to delay the start of his dialysis treatment until January 2018, which further degraded his kidney functions. Holmes does not address this argument in his opposition brief.  (Doc. 34.) However, in his opposition to Defendants' statement of facts, Holmes claims he raised the issue "in his appeal to Final Review of Grievance # 733085."  (Doc. 27 at ¶ 23; *see also* Doc. 23-1 at 25-27.)

There are two fundamental problems with Holmes' argument.  First, as explained above, the DOC's grievance policy specifically prohibits the combining of multiple issues in a grievance and only allows for issues presented in the original grievance to be pursued on appeal.  While Holmes may have mentioned this complaint in his appeal to final review, Grievance 733085 addressed his disagreement with the treatment provided for his complaints of bloody discharge

15

from his left nipple and makes no mention of his delayed receipt of dialysis.  (Doc.

23–1 at 16–17.)  The DOC's grievance policy required Holmes to complain about

his breast cancer and dialysis issues separately.  He did not do so.

Second, even if the court considered his dialysis issue included in the issues

contained in Grievance 733085, he could not pursue the claim as he failed to

properly exhaust his available administrative remedies as to this grievance for the

reasons discussed in Section A, *supra*.  As Holmes failed to properly exhaust his

claim concerning the start of his dialysis treatment, it is dismissed without

prejudice.

### C.  Holmes' Claim Challenging his Care for Testicular and Kidney Pain, Presented in Grievance 502096, is Time-Barred.

Pennsylvania's 2-year statute of limitations for personal injury action actions

applies to Holmes' § 1983 claims.  *See* 42 PA. CONS. STAT. § 5524; *Nguyen v.*

*Pennsylvania*, 906 F.3d 271, 273 (3d Cir. 2018) (Statute of limitations for § 1983

claims arising in Pennsylvania is two years).  However, it is federal law that

determines the date when a cause of action accrues.  Under federal law, a civil

rights action accrues and the statute of limitations begins to run "when the plaintiff

knew or should have known of the injury upon which [his] action is based." *Kach*

*v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009) (internal quotation marks and citations

omitted) (brackets added).  A "cause of action accrues even though the full extent

of the injury is not then known or predictable … Were it otherwise, the statute

16

would begin to run only after a plaintiff because satisfied that he had been harmed enough, placing the supposed statute of repose in the sole hands of the party seeking relief." *Wallace v. Kato*, 549 U.S. 384, 392 (2007) (internal quotation marks and citations omitted).

Section 1983's statute of limitations is subject to tolling.  The statute of limitations for civil rights claims is tolled while a prisoner exhausts his administrative remedies.  *See Pearson v. Sec. Dept. of Corr.*, 775 F.3d 598, 603 (3d Cir. 2015) ("[T]he PLRA is a statutory prohibition that tolls Pennsylvania's statute of limitations while a prisoner exhausts administrative remedies.")  It is also subject to equitable tolling if the plaintiff can prove:  "(1) the defendant actively mislead the plaintiff; (2) which prevented the plaintiff from recognizing the validity of her claim within the limitations period; and (3) where the plaintiff's ignorance is not attributable to her lack of reasonable due diligence in attempting to uncover the relevant facts." *Cetel v. Kirwan Fin. Grp., Inc.*, 460 F.3d 494, 509 (3d Cir. 2006).  A final exception to the tolling of the limitations is known as the "discovery rule."  It tolls the accrual of the limitations period where an injured plaintiff is unable to discover the injury "*despite the exercise of due diligence,* to know of the injury or its cause." *Mest v. Cabot Corp.*, 449 F.3d 502, 510 (3d Cir. 2006) (citing *Pocono Int'l Raceway,* 503 Pa. 80, 85, 468 A.3d 468, 471 (1983) (emphasis in original)).

17

The parties agree that Holmes properly exhausted Grievance 502096 concerning his claim that the medical department failed to properly treat his complaints of kidney and testicle pain.  He filed the grievance argue on March 7, 2014. SOIGA issued its decision upholding the denial of the grievance on September 15, 2014.  (Doc. 23–1, 2,13.)  Following *Pearson*, *supra,* Holmes' two-year statute of limitations as to claims derived from this grievance did not start until the conclusion of his exhaustion efforts, or until September 15, 2014.  Holmes filed his complaint in August, 2017.  The claim originating from Grievance 502096, had the accrual date of September 15, 2014, and thus, is barred by the two-year statute of limitations.  (Doc. 21-1.)  Holmes concedes this point saying, "claims arising before February 20, 2015 are foreclosed by the statute of limitations."  (Doc. 35 at 63.)  Accordingly, Holmes' Eighth Amendment claim concerning his treatment for testicular and kidney pain is time barred.

## CONCLUSION

For the foregoing reasons, the court will grant Defendants' motion for summary judgment.  (Doc. 21.)  An appropriate order will issue.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated:  July 17, 2020

18